UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KHADIJA ZEKIRI,

     Plaintiff,

v.                                                                    Case No: 6:24-cv-1232-JSS-NWH

SECRETARY, U.S. DEPARTMENT
OF STATE, and U.S. AMBASSADOR
TO NORTH MACEDONIA,

     Defendants.
_____/

## ORDER

Defendants move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim. (Dkt. 19.) Plaintiff does not oppose Defendant's motion.[1] Upon consideration, the court grants the motion in part, denies it in part, and dismisses the complaint without prejudice for lack of subject matter jurisdiction.

## BACKGROUND[2]

Plaintiff is a United States citizen who, at the time she filed her complaint, was engaged to marry Agron Rameti, a native and citizen of North Macedonia. (Dkt. 1

---

[1] Because Plaintiff did not timely respond to Defendants' motion, the court considers the motion as unopposed. *See* M.D. Fla. R. 3.01(c) ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

[2] The court accepts the well-pleaded, non-conclusory factual allegations in Plaintiff's complaint (Dkt. 1) as true and construes them in the light most favorable to Plaintiff. *See Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1291 (11th Cir. 2007).

¶¶ 10–11.)  Plaintiff sought a K-1 nonimmigrant visa for Rameti.  (*Id.* ¶ 12.)  To obtain the visa, Plaintiff submitted Form I-129F, Petition for Alien Fiancé(e) to the United States Citizenship and Immigration Services (USCIS) seeking to classify Rameti as her fiancé as described under 8 U.S.C. § 1101(a)(15)(K)(i).  (Dkt. 1.)  USCIS approved Rameti's visa application and sent notice of the approval to the National Visa Center (NVC).  (*Id.* ¶ 13.)  After receiving the application, the NVC sent Plaintiff a notice assigning a case number to the application in March 2023.  (*Id.* ¶¶ 14–15.)  The NVC also informed Plaintiff that the application was sent to the United States Consular Office in Skopje, North Macedonia, as required for further processing.  (*Id.* ¶¶ 16–17.)

In April 2023, Rameti appeared for an interview before the consular office.  (*Id.* ¶ 17.)  Following his interview, the consular office sent Rameti an Immigration Nationality Act (INA) Section 221(g) refusal and notified Rameti that his case would require additional administrative processing.  (*Id.* ¶ 18; Dkt. 1-3.)  That same month, the consular office sent Rameti a supplemental questions form (Form DS-5535), which he promptly completed and returned.  (Dkt. 1 ¶¶ 19–20.)  The consular office confirmed its receipt of Rameti's completed form and advised Plaintiff and him that it would resume processing his application.  (*Id.* ¶ 20.)  Since April 2023, Rameti's application has been pending.  (*Id.* ¶ 21.)  Plaintiff and Rameti have made numerous inquiries to the consular office since April 2023, and each time, they have been informed that the case requires further administrative processing.  (*Id.*)

Plaintiff filed her complaint seeking judicial review of Defendants' alleged administrative inaction under the Administrative Procedure Act (APA), 5 U.S.C.

§ 704, and a writ under the Mandamus Act, 28 U.S.C. § 1361, compelling Defendants to complete consular processing of Rameti's visa application. (Dkt. 1 ¶¶ 4–5, 23–28.) Specifically, Plaintiff alleges that because Rameti's visa application has been filed, all required filing fees have been paid, and a visa interview was held, Defendants are required to—and have failed to—adjudicate the application within a reasonable period. (*Id.* ¶ 24–26.) Thus, according to Plaintiff, Defendants have failed to perform their clear duty to act in this immigration visa process. (*Id.*) Defendants move to dismiss the complaint, asserting that the court lacks subject matter jurisdiction to review the consular office's processing of Rameti's application under the consular nonreviewability doctrine, the APA, and the Mandamus Act because she has not identified a mandatory discrete act that would give the court jurisdiction to compel agency action. (Dkt. 19 at 10–20.) Defendants further assert that Plaintiff fails to state a claim for relief because any delay from the consular office in processing Rameti's application is not unreasonable under the APA or Mandamus Act. (*Id.* at 20–22.)

Because Defendants' subject matter jurisdiction arguments are dispositive, the court does not reach Defendants' arguments regarding failure to state a claim or consular nonreviewability. *See Avullija v. Sec'y of State*, 839 F. App'x 292, 295–296 (11th Cir. 2020) (explaining that "the doctrine of consular nonreviewability goes towards the merits of a case[] and does not divest the court of subject matter jurisdiction"). Although Defendants' motion is unopposed, the court must nonetheless examine the merits of the motion. *See Giummo v. Olsen*, 701 F. App'x 922,

924 & n.2 (11th Cir. 2017) (explaining that dismissing a complaint solely because a motion to dismiss is technically unopposed is an abuse of discretion).

## APPLICABLE STANDARDS

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  The party seeking to invoke the court's jurisdiction "has the burden of establishing, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085–86 (11th Cir. 2010) (citing Fed. R. Civ. P. 8(a)(1); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002)).  If a court lacks jurisdiction, its "only remaining function is to announce that [it] lack[s] jurisdiction and dismiss the cause." *Nationwide Mut. Ins. Co. v. Barrow*, 29 F.4th 1299, 1301 (11th Cir. 2022) (citing *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019)).  A party may bring a motion to challenge a court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

"Attacks on subject matter jurisdiction under [Rule 12(b)(1)] come in two forms: facial attacks and factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D's, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997) (quotation omitted).  "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are

taken as true for the purposes of the motion." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quotation omitted and alterations adopted). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quotation omitted). Before the court resolves a factual attack on jurisdiction, it must "give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). Here, Defendants raise a facial attack on Plaintiff's complaint. (*See* Dkt. 19.) *See McElmurray*, 501 F.3d at 1251.

## ANALYSIS

The court first provides a brief overview of the noncitizen fiancé visa application process and then discusses why the court lacks subject matter jurisdiction to compel consular office action in this case under the Mandamus Act or the APA.

### A. Overview of the Process

Because "foreign nationals seeking admission [to the United States] have no constitutional right to entry," noncitizens must generally have a visa to enter the United States. *Trump v. Hawaii*, 585 U.S. 667, 702–03 (2018); *accord Dep't of State v. Muñoz*, 602 U.S. 899, 903 (2024). "Visa decisions are made by the political branches." *Muñoz*, 602 U.S. at 903. "A K–1 nonimmigrant visa, known colloquially as a 'fiancé visa,' permits the [noncitizen] fiancé of an American citizen to travel to the United

States to marry his or her citizen sponsor within ninety days of arrival." *Zeng v. U.S. Att'y Gen.*, 579 F. App'x 900, 901 n.1 (11th Cir. 2014); *see* 8 U.S.C. §§ 1101(a)(15)(K)(i), 1184(d); 8 C.F.R. § 214.2(k). To obtain a K-1 visa, the noncitizen and the American fiancé must complete a Form I-129F, Petition for Alien Fiancé(e). 8 U.S.C. § 1184(d); 8 C.F.R. § 214.2(k). Once approved by the State Department, a noncitizen fiancé may apply for a visa. *See* 8 U.S.C. § 1202(a). By statute, the next step for "[a]ll immigrant visa applications [is to] be reviewed and adjudicated by a consular officer." *Id.* § 1202(b), (h). The noncitizen fiancé must also submit written materials and interview in person with a consular officer abroad. *Id.* § 1202(c), (d), (h).

"Before issuing a visa, the consular officer must ensure the [noncitizen fiancé] is not inadmissible under any provision of the [INA, 8 U.S.C. §§ 1101–1537]." *Kerry v. Din*, 576 U.S. 86, 89 (2015). One statutory provision under which a noncitizen fiancé visa can be refused is INA section 221(g), which specifically governs refusals of visa applications usually due to missing information or the need for administrative processing. *See* INA § 221(g) (codified at 8 U.S.C. § 1201(g)); *see also* 22 C.F.R. § 41.121(a). Thus, once presented with a properly executed nonimmigrant visa application, a consular officer must take one of three actions: (1) issue the visa, (2) refuse the visa pursuant to INA sections 212(a) or 221(g) or other applicable law, or (3) discontinue granting the visa. 22 C.F.R. § 41.121(a); *see* 8 U.S.C. § 1201(a), (g). As such, if a consular officer determines that a noncitizen is ineligible to receive a visa under INA section 221(g), the visa is refused. *See* 8 U.S.C. § 1201(g); 22 C.F.R.

§ 41.121(a).  The burden remains on the applicant to "establish that he [or she] is eligible to receive such visa."  8 U.S.C. § 1361; *see* 22 C.F.R. § 40.6.

## B. The Mandamus Act

The "admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"  *Trump*, 585 U.S. at 702 (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)).  Under the Mandamus Act, "district courts . . . have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  A writ of mandamus is an extraordinary remedy available "only in the clearest and most compelling of cases."  *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (quotation omitted); *accord Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).

A district court may exercise jurisdiction over a mandamus action "only if (1) the plaintiff has a clear right to the relief requested[,] (2) the defendant has a clear duty to act[,] and (3) no other adequate remedy is available."  *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260, 1263 (11th Cir. 2011) (citing *Cash*, 327 F.3d at 1258).  "Thus, whether a plaintiff seeks a writ of mandamus or to compel agency action under the APA, the court only has jurisdiction where the plaintiff can identify a discrete, nondiscretionary—that is, mandatory—duty for the agency to act."  *Nikpanah v. U.S. Dep't of State*, No. 2:24-cv-00404-NAD, 2025 WL 374931, at *4 (N.D. Ala. Feb. 3, 2025).  The party seeking a writ of mandamus "carries the burden of showing that [its]

right to the issuance of the writ is clear and indisputable." *Carpenter v. Mohawk Indus. Inc.,* 541 F.3d 1048, 1055 (11th Cir. 2008) (cleaned up).

Defendants assert that Plaintiff fails to identify a clear mandatory duty for the consular officer to reconsider or re-adjudicate Rameti's visa application after it had been refused for further administrative processing pursuant to INA section 221(g). (Dkt. 19 at 10.) Plaintiff did not respond and therefore fails to meet her burden of identifying a clear mandatory duty that the consular office failed to perform. *See Serrano*, 655 F.3d at 1263; *Carpenter*, 541 F.3d at 1055. While the court accepts the factual allegations in the complaint as true and construes all reasonable inferences in Plaintiff's favor, Plaintiff does not identify in her complaint a clear mandatory duty that Defendants failed to perform. (*See* Dkt. 1.) According to the complaint, Plaintiff applied for Rameti's visa. (Dkt. 1 ¶ 12.) USCIS approved the application, and Rameti was interviewed at the consular office in April 2023. (*Id.* ¶¶ 13, 17.) Thereafter, the consular office refused to process the application pursuant to INA section 221(g) and requested additional information. (*Id.* ¶¶ 18–19.) After Rameti provided the requested information, his application has remained in post-refusal administrative processing for over a year. (*Id.* ¶¶ 20–21.)

As previously stated, the consular officer reviewing Rameti's application was required to ensure that he was not ineligible to receive a visa under the INA. *See* 8 U.S.C. §§ 1201(g), 1361; *Kerry*, 576 U.S. at 89 ("Before issuing a visa, the consular officer must ensure the [noncitizen] is not inadmissible under any provision of the INA.") (citing 8 U.S.C. § 1361). In this case, Rameti's application was refused for

further administrative processing after his April 2023 consulate interview.  (*See* Dkt. 1 ¶¶ 17–18.)    An initial refusal to issue a visa at the consular level, followed by administrative processing, constitutes a final decision on the part of the consular office. *See Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *3–6 (D.C. Cir. July 24, 2024)) (affirming the district court's dismissal of the noncitizen plaintiff's complaint seeking a writ of mandamus and review under the APA and explaining that the plaintiff failed to identify a clear duty that the consular office failed to perform in processing her visa application after the consular office refused it for further administrative processing pursuant to INA section 221(g)); *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024) ("In refusing [the p]laintiffs' applications under [section] 221(g) after their interviews with consular officers, [the defendants] complied with the regulations governing visa adjudications. [The defendants] thereby discharged [their] nondiscretionary duty."); *Yousefifar v. U.S. Dep't of State*, No. 4:24-CV-109, 2025 WL 1805315, at *7 (S.D. Ga. June 30, 2025) (concluding that the plaintiff's nonimmigrant visa application that was initially refused for further administrative processing at the consular level was a final decision); *see also* 8 U.S.C. §§ 1201(g), 1202(b); 22 C.F.R. § 41.121(a)-(b) (providing grounds on which a consular officer may refuse a nonimmigrant visa application and providing a mechanism to overcome a consular officer's visa refusal).  As Rameti's visa was refused under INA section 221(g), and 8 U.S.C. § 1202(b) requires solely that the visa applications be "reviewed and adjudicated," Plaintiff has not identified a mandatory duty that Defendants failed to take.

Additionally, Plaintiff has not demonstrated a clear and indisputable right to the issuance of a writ of mandamus, because there is no congressionally or administratively prescribed timeframe in which USCIS is required to adjudicate a visa application. *See Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 420 (11th Cir. 2009) (affirming the district court's holding that the Mandamus Act provided no basis for jurisdiction where the action complained of was discretionary); *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1255 (S.D. Fla. 2022). As Defendants exercise discretionary, and not mandatory, powers in the pace of processing visa applications, Plaintiff has not established a clear duty to act with respect to the pacing of Rameti's application. *See Sands*, 308 F. App'x at 420; *Alfassi*, 614 F. Supp. 3d at 1255; *see also Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007) (finding that USCIS, with respect to an I-485, Application to Adjust Status, "has a non-discretionary duty to *act* on an application, a discretionary duty as to the *pace* of processing the application, and a non-discretionary duty to *adjudicate* an application"). Therefore, the court does not have subject matter jurisdiction under the Mandamus Act. *See Serrano*, 655 F.3d at 1263; *Carpenter*, 541 F.3d at 1055; *see also Hasan v. Wolf*, 550 F. Supp. 3d 1342, 1349 (N.D. Ga. 2021) (holding that with respect to USCIS, absent "a clear duty to act," a district court lacks jurisdiction under the Mandamus Act "to review the pace at which USCIS adjudicates [a p]laintiff's [a]pplication").

## C. The Administrative Procedure Act

Plaintiff also challenges the pace of the consular office's processing of Rameti's visa application under the APA.  Plaintiff alleges that because Rameti's application remained in post-refusal status for a year by the time she filed the complaint, the consular office did not issue a final adjudication on Rameti's application within a reasonable period as required by the APA.  (Dkt. 1 ¶¶ 23–28.)  Defendants assert that because Rameti's application was refused pursuant to INA section 221(g), Plaintiff cannot identify a clear non-discretionary duty that the consular office failed to meet, and any alleged delay in the processing of Rameti's application is neither unlawful nor unreasonable under the APA.  (Dkt. 19 at 11.)

"Although the APA independently does not confer subject[ ]matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal[ ]question jurisdiction."  *Perez v. USCIS*, 774 F.3d 960, 965 (11th Cir. 2014) (citing *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977)).  The APA requires federal administrative agencies to conclude matters presented to them within a reasonable time.  *See* 5 U.S.C. § 555(b).  To this end, the APA instructs federal courts to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  "The scope of judicial review [under the APA], however, is limited."  *Alfassi*, 614 F. Supp. 3d at 1256.  "A district court may only compel an agency to perform a ministerial or non[]discretionary act[] or to take action upon a matter without directing the agency how it shall act."  *Id*. (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)); *accord Norton*, 542 U.S. at 64 (explaining that an APA claim can only proceed "where

- 11 -

a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*"); *Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 875 (11th Cir. 2009). Additionally, the APA makes agency action unreviewable by the district court if the "agency action is committed to agency discretion by law." *Bouarfa v. Sec'y, Dep't of Homeland Sec.*, 75 F.4th 1157, 1161 (11th Cir. 2023); *see also* 5 U.S.C. §§ 551(13), 701(a)(2).

The court has already determined that a final adjudication of Rameti's application was reached when the consular office initially refused his application under INA section 221(g). *See Karimova*, 2024 WL 3517852, at *3–6; *Yousefifar*, 2025 WL 1805315, at *8; *see also* 22 C.F.R. § 41.121(a). Thus, because Rameti's application was refused for further administrative processing, Plaintiff has not identified a nondiscretionary action that the consular officer failed to take under 22 C.F.R. § 41.121(a). The consular office "conclude[d]" the "matter" of Rameti's application "within a reasonable time" for purposes of the APA. *See* 5 U.S.C. § 555(b). In any event, the Supreme Court has held that standing alone, the passage of time cannot sustain a claim of unreasonable delay under the APA. *INS v. Miranda*, 459 U.S. 14, 18 (1982) ("Proof only that the Government failed to process promptly an application falls far short of establishing [misconduct].").

Therefore, because Plaintiff has not identified a nondiscretionary "agency action" that was "unreasonably delayed," the court lacks subject matter jurisdiction under the APA. *See Norton*, 542 U.S. at 64; *Alfassi*, 614 F. Supp. 3d at 1256; *Yousefifar*, 2025 WL 1805315, at *8; *see also Naseri v. Rubio*, No. 1:24-cv-1691 (RDA/LRV), 2025

WL 1888249, at *3 (E.D. Va. July 8, 2025) ("[The] [d]efendants here have already taken the discrete action required of them by issuing section 221(g) notices of refusal for administrative processing and thus have satisfied their obligation to adjudicate the visa applications").

## CONCLUSION

Accordingly:

1. Defendants' Motion to Dismiss (Dkt. 19) is **GRANTED in part and DENIED in part**.

2. Plaintiff's complaint (Dkt. 1) is **DISMISSED without prejudice** for lack of subject matter jurisdiction. The motion is otherwise **DENIED**.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines and to close this case.

**ORDERED** in Orlando, Florida, on July 18, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record